IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GETTING GRACE FILM, LLC,
Plaintiff,

v.

HANNOVER HOUSE, INC., *et al.*,
Defendants.

CIVIL ACTION
No. 19-1607

**MEMORANDUM**

SCHMEHL, J.  **/s/ JLS**                                   SEPTEMBER 3, 2020

This matter arises out of disputes over the proceeds from the production and release of a feature film, "Getting Grace."  (ECF No. 1, Ex. 1.)  Plaintiff Getting Grace is a Pennsylvania limited liability company organized as ". . . the authorized owner and/or copyright proprietor and licensing source for the original, feature film . . . 'Getting Grace.'" (ECF No. 1, Ex. 1, ¶¶ 1, 9.) On December 18, 2017, Plaintiff entered into a Worldwide Distribution Agreement ("Agreement") with ". . . [all] Defendants to this lawsuit, whether individually or as a principal, representative, owner and/or agent of [(an)other] Defendant(s)." (*Id.*, ¶ 10.)

Pursuant to this Agreement, Defendants Hannover House, Inc. ("Hannover") and Medallion Releasing, Inc. ("Medallion") were to represent the film for a nationwide theatrical engagement.  (*Id.*, ¶ 12.)  The Agreement obligated Hannover and Medallion to enter into a separate contract with Sony Pictures Home Entertainment ("SPHE") to release the film ". . . to physical home video [devices] for resale, for sales to retailers, online-seller[s], and other appropriate outlets in the United States and Canada, as well as for television and Video-On-Demand." (*Id.*, ¶ 13.)  The Agreement also included terms defining a "preliminary theatrical

release and marketing plan and budget . . ." for the film's release.  (*Id.*, ¶ 14.)  As part of this, Plaintiff agreed to provide $50,000 of Publicity and Advertising funds to finance a bus tour and an additional $150,000 for the film's release to targeted markets.  (*Id.*, ¶ 15-16.)

Additionally, in the Agreement, Hannover and Medallion agreed to pay Plaintiff a minimum guarantee of $250,000 for the United States and Canadian markets, as well as a $200,000 minimum guarantee for the international market, "following full delivery of the Picture and advance payment by [Plaintiff] to [Hannover and Medallion] of the total . . . aforementioned amounts."  (*Id.*, ¶ 17.)  These minimum guarantees were to be paid to Plaintiff against its net revenues and were to be paid, at the latest, by December 30, 2018.  (*Id.*, ¶ 18.)  These components of the parties' arrangement were also memorialized in two Promissory Notes, appended to the Agreement and executed by Defendant Erik Parkinson.  (*Id.*, ¶ 19-20.)

The first Promissory Note ("P&A Note") was issued by Hannover and Medallion, as borrowers, to Plaintiff, as creditor, with a principal of $200,000 for the film's distribution pursuant to the Agreement.  (*Id.*, ¶ 21.)  Plaintiff paid this amount in full according to the agreed-upon payment schedule.  (*Id.*, ¶¶ 22-23.)  Plaintiff also filed and recorded a ". . . U.C.C. Security Interest in and to all the revenues to be derived from the distribution . . ."  (*Id.*, ¶ 25.)  Under this Note, Plaintiff's Security Interest would survive ". . . until such a time that the principal, applicable interest, and IAF were fully and indefeasibly paid to [Plaintiff]."  (*Id.*, ¶ 26.)  As such, Hannover and Medallion were required to instruct all licensors, sub-licensors, customers, purchasers, exhibitors, and distributors of the film to direct all revenue payments to a specifically designated, segregated bank account for Plaintiff's benefit.  (*Id.*, ¶ 27.)  This Note also provided that Hannover and Medallion would pay all of Plaintiff's ". . . reasonable expenses incurred to enforce or collect any of the obligations under the P&A Note, including, without limitation, reasonable attorney's

fees and expenses . . ." (*Id.*, ¶ 28.)

The second Promissory Note ("Minimum Guarantee Note") established a minimum guarantee of $450,000, promised by Hannover and Medallion to Plaintiff in exchange for the rights to distribute the film. (*Id.*, ¶ 29-30.) As with the first Note, Plaintiff filed and recorded a U.C.C. Security Interest in and to all revenues to be derived from the film's distributions. (*Id.*, ¶ 32.) This Security Interest was to survive until such a time that the principal and applicable interest under the Minimum Guarantee Note were paid in full to Plaintiff. (*Id.*, ¶ 33.) As such, and as with the first Note, Hannover and Medallion were required to instruct all licensors, sub-licensors, customers, purchasers, exhibitors, and distributors of the film to direct all revenue payments to a specifically designated, segregated bank account for Plaintiff's benefit. (*Id.*, ¶ 34.) A similar provision regarding enforcement expenses was also included. (*Id.*, ¶ 35.)

Both the P&A Note and the Minimum Guarantee Note provide that ". . . failure of [Hannover and Medallion] to pay on the note when due, plus a ten (10) day cure period, entitled [Plaintiff] to provide written notice . . . of the total unpaid principal, accrued interest, and IAF immediately due and payable." (*Id.*, ¶¶ 36, 38.) Additionally, both notes provide that Hannover and Medallion's failure to pay would entitle Plaintiff to a consent judgment against them. (*Id.*, ¶¶ 37, 39.) In the aggregate, the P&A Note and the Minimum Guarantee Note had principal amounts of $650,000 and were both subject to 7% interest per annum. (*Id.*, ¶ 41.) The P&A Note further required payment of a $16,000 IAF fee. (*Id.*, ¶ 42.)

On or around October 29, 2018, Daniel Roebuck personally paid, on behalf of Plaintiff to Signature Media, approximately $11,628.50 for the film's DVD replication costs. (*Id.*, ¶ 43.) He also paid shipment costs to Walmart on behalf of Hannover. (*Id.*) Hannover, via an email from Erik Parkinson, agreed to fully reimburse Roebuck from the proceeds of a ". . . Michael Kahn

stock venture within approximately one week."   (*Id.*, ¶ 44.)  The same day, Roebuck confirmed to Parkinson and co-defendant D. Frederick Shefte that he expected payment in full by November 13, 2018, or thereafter with interest.  (*Id.*, ¶ 45.)  Parkinson responded the following day, stating "[u]nderstood and agreed . . . we are closing the corp. finance portion to cover this now . . ."   (*Id.*, ¶ 46.)  Plaintiff later loaned this money to Roebuck, and Plaintiff now contends that this amount is now due directly to Plaintiff and not Roebuck.  (*Id.*, ¶ 47.)

On November 29, 2018, Plaintiff, by and through representatives and/or agents, participated in a conference call with Defendants Parkinson and Shefte, who ". . . were acting individually and/or as principals, representatives, and/or agents of [Hannover and Medallion]." (*Id.*, ¶ 48.)  During this call, Parkinson stated that ". . . he was going [to] get the 'rest of the theatrical collected' from the [film] so that he could use that [money] to 'retire a portion of the P&A funding.'"  (*Id.*, ¶ 49.)

Both Promissory Notes matured on December 30, 2018.  (*Id.*, ¶ 50.)  Having not received payments due under both the Agreement and the Promissory Notes, Plaintiff's counsel filed a Notice of Default on January 11, 2019.  (*Id.*, ¶ 51.)  Later, on January 25, 2019, Plaintiff's counsel also filed U.C.C. liens against Hannover and Medallion in accordance with the Agreement and both Promissory Notes.  (*Id.*, ¶ 52.)

Stemming from these allegations of nonpayment under the Agreement and Promissory Notes, Plaintiff has now brought the following claims before the Court:

I.   Breach of Contract (against all defendants);
II.  Unjust Enrichment (against all defendants);
III. Violation of the Pennsylvania Securities Act of 1972 (against all defendants);
IV.  Fraud and Misrepresentation (against all defendants);
V.   Piercing the Corporate Veil (against defendants Parkinson, Shefte, Sims, and Sargent[1]);

---

[1] Former defendant Bobby Sargent was dismissed from this matter, without prejudice, by stipulation.  (*See* ECF No. 44.)

and

VI. Declaratory Judgment pursuant to Pennsylvania Rule of Civil Procedure 1602.

(ECF No. 1, Ex. 1, ¶¶ 54-136.)

This matter is now before the Court on Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, or, in the alternative, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.  (ECF No. 46.)  For the following reasons, and lacking personal jurisdiction, we transfer all claims against Defendants Parkinson, Shefte, and Sims to the United States District Court for the Western District of Arkansas.  We also transfer, to the same court, venue as to all claims asserted against Defendants Hannover and Medallion pursuant to § 1404(a).

## I.    LEGAL STANDARDS

### a.   Personal Jurisdiction

Exercising general jurisdiction over a defendant is appropriate where a defendant's activities within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)).  The Supreme Court has clarified that "'. . . the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Generally, for corporations, this is the place of incorporation and the corporation's principal place of business, although general jurisdiction may be exercised where a corporation's affiliations with a forum state are so continuous and systematic as to render it essentially at home there.  *Daimler*,

571 U.S. at 137-139 (citing *Goodyear*, 564 U.S. at 919).

The exercise of specific jurisdiction, in contrast, turns on the connection between the forum jurisdiction and the underlying controversy; it is limited to issues arising out of or related to the controversy establishing jurisdiction.  *Goodyear*, 564 U.S. at 923-24 (citations omitted).  Indeed, the Supreme Court has long held that, to exercise specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (holding that an Oklahoma court could not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma."); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (holding that the "substantial connection" between a defendant and the forum, necessary for a finding of minimum contacts, must derive from an action purposefully directed toward the forum state and that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Pennsylvania's long-arm statute allows us to exercise jurisdiction over nonresident defendants to the full extent permitted by the United States Constitution.  FED. R. CIV. P. 4(k)(2); 42 PA. CONS. STAT. § 5322(b).  When a defendant challenges the court's personal jurisdiction, the plaintiff then bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper."  *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020)

(quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  To analyze these facts, we rely upon the three-part framework established by our Third Circuit Court of Appeals.  First, the plaintiff must show that the defendant purposefully directed its activities at the forum.  *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations omitted).  Second, the litigation must arise out of or relate to at least one of those activities.  *Id.*  Third, if the plaintiff fulfills the first two requirements, we may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice."  *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476.)

### b.  Venue

Venue in United States District Courts is governed by 28 U.S.C. §1391.  The statute provides that, generally, venue for civil actions is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b).

In this analysis, residency is determined differently for natural persons and "entit[ies] with the capacity to sue and be sued in [their] common name[s] under applicable law . . ."  28 U.S.C. §1391(c)(1)-(2).  A natural person is deemed to reside in the judicial district in which that person is domiciled.  28 U.S.C. §1391(c)(1).  A defendant business entity, however, is deemed to reside ". . . in any judicial district in which such defendant is subject to the court's personal jurisdiction . . ."  28 U.S.C. §1391(c)(2).

Venue may be transferred to another District Court when the original venue is improper,

7

or for the convenience of parties and witnesses where both the original and the requested venue would be proper.  28 U.S.C. § 1404(a); 28 U.S.C. § 1406.  If the original venue is proper, transfers of venue for the convenience of parties and witnesses are rested in the discretion of the District Court.  *Lafferty v. Riel*, 495 F.3d 72, 77 (3d Cir. 2007).  Where the original venue is improper, however, the District Court may transfer the case to a proper venue, rather than dismiss the case, if the "interest of justice" so requires.  *Id*. at 75; *See also* 28 U.S.C. § 1406.

## II.    PERSONAL JURISDICTION

### a.  No Defendant Is Subject to General Jurisdiction Within the Commonwealth of Pennsylvania

Defendants first argue that this Court lacks general personal jurisdiction over all Defendants.  (ECF No. 46, ¶¶ 13-26.)  It is uncontested that no defendant in this matter is a resident of Pennsylvania, a company organized under Pennsylvania law, or a company with its principal place of business in Pennsylvania.[2]  (*See* ECF No. 1 Ex. 1, ¶¶ 2-7.)  Defendants, however, further contend that "[n]o Defendant in the present action conducts continuous or systematic business of a substantial nature in the present forum, thus this Court cannot exercise general personal jurisdiction over Defendants."  (ECF No. 46, ¶ 14.)

In response, Plaintiff argues that Defendants do have systematic and continuous contacts with Pennsylvania as they ". . . distribute films on a national and international scale, including to

---

[2] At present, five defendants remain in this action:

1. Hannover House, Inc. is a Wyoming corporation with its principal place of business in Arkansas;
2. Medallion Releasing, Inc. is an Arkansas corporation with its principal place of business also in Arkansas;
3. Eric F. Parkinson is a resident of Arkansas;
4. D. Frederick Shefte is a resident of Arkansas; and
5. Tom Sims is a resident of Arkansas.

(ECF No. 1, Ex. 1, ¶¶ 2-7.)

Pennsylvania, and the entire film on which this lawsuit is based, Getting Grace, was filmed in the Lehigh Valley, Pennsylvania. Additionally, the contract at issue was entered into with a Pennsylvania company for a Pennsylvania film, and the securities at issue were issued to a Pennsylvania company." (ECF No. 48, ¶ 14.) Plaintiff repeats this argument verbatim numerous times throughout its brief. (*See id.*, ¶¶ 14-17, 19, 23, 26, 36, 42, 45-46, 60.)

The exercise of general jurisdiction mandates a strong nexus between a defendant's essential business activities and its contacts with the forum. *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 597 (M.D. Pa. 2009). Moreover, when a defendant challenges a court's personal jurisdiction, the plaintiff bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d. Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, Plaintiff has not presented facts that establish continuous and systematic contacts between any defendant and Pennsylvania. *See In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. at 597 ("In the corporate context, courts have historically applied general jurisdiction to organizations that hire employees, hold real property, maintain bank accounts, apply for business licenses, advertise, and regularly solicit sales within the relevant forum."); *See also Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 438 (3d Cir. 1987) (upholding general personal jurisdiction because the defendant's contacts with Pennsylvania were ". . . the bread and butter of its daily business.").

Indeed, Plaintiff has only provided argument as to ties between Defendants and Pennsylvania that relate to the current dispute and has not met its burden of proof. As such, we find that this Court cannot exercise general personal jurisdiction over any defendant in this dispute.

**b. Corporate Defendants Hannover and Medallion Are Subject to Specific Personal Jurisdiction in This Dispute; Defendants Parkinson, Sims, and Shefte Are Not**

Defendants then collectively argue that this Court cannot exercise specific personal jurisdiction over any defendant in this action. (ECF No. 46, ¶¶ 27-50.) Specifically, Defendants aver that only two named defendants—Hannover and Medallion—"could have possible directed any actions, commercial or otherwise . . ." toward Pennsylvania as they are the only named parties to the Worldwide Distribution Agreement and the corollary Promissory Notes. (*Id.*, ¶ 34-35.) Even then, Defendants claim that Hannover and Medallion's only connection with Pennsylvania in this matter was the intent to contract with a Pennsylvania LLC. (*Id.*, ¶ 36.) In so arguing, they highlight that Plaintiff only claims that "Defendant Hannover entered into a contract with [an] LLC organized in Pennsylvania . . . and subsequently agreed to send payments due . . ." to an address in Pennsylvania. (Id., ¶ 45.)

Moreover, Defendants aver that the Agreement in dispute is governed by the laws of Arkansas, and that the "Promissory Notes evidence a contractual agreement by both parties to have their relationship governed by Arkansas law and to adjudicate any disputes thereof in an Arkansas court." (*Id.*, ¶¶ 37-38.) To further emphasize their argument, Defendants emphasize that neither the Agreement nor the Promissory Notes provided them notice of Plaintiff's organization under Pennsylvania laws. (*Id.*, ¶ 39.) Additionally, they note that "Dan Roebuck, the only agent of Plaintiff known to defendants at the time of contract, met several times with agents of Defendants . . . all at locations outside the [C]ommonwealth of Pennsylvania." (*Id.*, ¶ 40.) Defendants also claim that, given the facts of this case, "[t]he state of Arkansas has a far greater interest in this case [than Pennsylvania], as an Arkansas court would properly be afforded the opportunity to adjudicate contract formation/interpretation and the exercise of the Arkansas-filed U.C.C. Security Interest."

10

(*Id.*, ¶ 43-44.)

In response, Plaintiff offers the following facts.  First, Plaintiff rebuts Defendants argument that only Hannover and Medallion could have possibly directed any activities toward Pennsylvania.  (ECF No. 48, ¶ 34-35.)  In so arguing, it notes that Defendant Erik Parkinson signed the Agreement and Promissory Notes on behalf of Hannover and that Plaintiff has a claim to pierce the corporate veil ". . . which imparts individual liability."  (*Id.*, ¶ 34.)  Further, Plaintiff asserts that "[t]he individual [d]efendants, who were officers, directors, and/or employees of the corporate [d]efendants likewise repeatedly availed themselves of the laws of this Commonwealth by contracting with Pennsylvania companies . . . target[ing] Pennsylvania audiences through marketing and advertising on a repeated basis[,] and by failing to adhere to proper corporate formalities."  (*Id.*, ¶ 35.)  They also assert that specific jurisdiction in this action is appropriate as the individual Defendants ". . . fraudulently induced a Pennsylvania business to enter into contractual relations with their shell companies . . ."  (*Id.*)  Lastly, Plaintiffs maintain that this Court can exercise specific jurisdiction over all defendants as Defendants ". . . repeatedly communicated with Plaintiff in Pennsylvania . . ."  (*Id.*, ¶ 49.)

When assessing a motion to dismiss for lack of personal jurisdiction, the Court must consider the pleadings and affidavits offered in the light most favorable to the non-moving party. *Lieb v. Am. Pac. Int'l Inc.*, 489 F. Supp. 690, 694 (E.D. Pa. 1980) (citing *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 193 (E.D. Pa. 1974)).  However, the plaintiff bears the burden of proving that personal jurisdiction is proper, with reasonable particularity, through sworn affidavits or other competent evidence.  *Brown v. AST Sports Sci., Inc.*, No. 02-1682, 2002 U.S. Dist. LEXIS 12294, at *9 (E.D. Pa. June 28, 2002) (citations omitted).

The Third Circuit Court of Appeals has determined that, in certain circumstances, personal

jurisdiction over nonresident defendants may be ". . . premised largely on the defendant's contract with a resident of the forum state." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (quoting *Vetrotex CertainTeed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152-53 (3d Cir. 1996)). In one such representative case, the Third Circuit upheld personal jurisdiction over nonresident defendants on a breach of contract claim because the defendant (1) sought out the plaintiff's business by calling plaintiff's Philadelphia office; (2) signed a fee arrangement which was returned to Pennsylvania; (3) sent at least one payment to Philadelphia; (4) performed the majority of his services at plaintiff's Philadelphia office; and (5) had repeated "informational communications" with the plaintiff at his Philadelphia office. (*Id*. at 256.)

Similarly, the facts of the present matter allow us to exercise specific jurisdiction over the business entity defendants, Hannover and Medallion. These defendants contracted with a Pennsylvania company to create a film in Pennsylvania. They further marketed and advertised this film to Pennsylvania audiences, agreed to send payment to a Pennsylvania address, and maintained repeated communications with Plaintiff in Pennsylvania. As such, we find that Plaintiff has shown that Defendants Hannover and Medallion have sufficient minimum contacts with this Commonwealth to be subject to specific personal jurisdiction in this dispute.

However, Plaintiff has not met its burden proving that this Court may exercise specific jurisdiction over the remaining natural person defendants in this matter: Erik F. Parkinson, D. Frederick Shefte, and Tom Sims. First, Plaintiff suggests that this Court has personal jurisdiction over Parkinson as he ". . . signed the Agreement and the Promissory Notes on behalf of Hannover House . . ." (ECF No. 48, ¶ 34.) Generally, under the "fiduciary shield doctrine," a court cannot exercise personal jurisdiction over an individual defendant whose only contacts with the forum state are as an officer or agent of a corporation. *Sneberger v. BTI Americas, Inc.*, No. 98-932,

1998 U.S. Dist. LEXIS 18844, at *8 (E.D. Pa. Nov. 30, 1998) (citations omitted); *Gross v. Schnepper*, 62 B.R. 323, 327 (E.D. Pa. 1986) (concluding that the court did not have personal jurisdiction over a corporate officer who signed a contract in Pennsylvania in his corporate, not individual capacity); *Martin v. Sturm, Ruger & Co.*, 548 F. Supp. 1, 2 (E.D. Pa. 1981) ("[e]stablishing personal jurisdiction over the individual on the basis of doing business requires evidence showing not only that he did business within the state . . . but also that he conducted that business 'for himself and not for or on behalf of his corporation.'") (citation omitted)).  Here, Plaintiff has not alleged any contacts between Parkinson—in his individual capacity—and the Commonwealth of Pennsylvania.  As such, we find that we cannot exercise jurisdiction over him on this basis.

Second, Plaintiff suggests that this Court may exercise personal jurisdiction over all three natural person defendants as Plaintiff has brought ". . . a claim to pierce the corporate veil which imparts individual liability."  (ECF No. 48, ¶ 34.)  For this Court to exert jurisdiction on this basis, ". . . Plaintiff must present sufficient facts to support a showing of piercing the corporate veil." *Air Sea Int'l Forwarding, Inc. v. Global Imps. & Trading, Inc.*, No. 03-268, 2008 U.S. Dist. LEXIS 133087, at *25 (D.N.J. Apr. 18, 2008).  Exercising personal jurisdiction based on ". . . piercing the corporate veil is disfavored because piercing the corporate veil is a disfavored practice which demands a specific and exacting showing."  *Spotts Bros. v. Seraphim USA Mfg.*, No. 18-2235, 2019 U.S. Dist. LEXIS 142131, at *20 (M.D. Pa. Aug. 20, 2019).  Indeed, in Pennsylvania, there is a strong presumption against piercing the corporate veil.  *Id.* (quoting *Lumax Indus. v. Aultman*, 669 A.3d 893, 895 (1995)).  Thus, "[i]n practice, courts will consider piercing the corporate veil only when the evidence reveals 'undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to

perpetuate a fraud.'"  Although Plaintiff has alleged in its Complaint that Defendants Parkinson, Shefte, and Sims undercapitalized Hannover and Medallion and abused the corporate form to further their personal interests, it has not produced any evidence to meet the aforementioned exacting standard.  (*See* ECF No. 1 Ex. 1, ¶¶ 112-124.)  As such, we find that we cannot exercise personal jurisdiction over any of the natural person defendants in this action.

### c. All Claims Against Defendants Parkinson, Shefte, and Sims are Transferred to the United States District Court for the Western District of Arkansas

Even while viewing all evidence in the light most favorable to Plaintiff, we find that we cannot properly exercise jurisdiction over Defendants Parkinson, Shefte, and Sims in this matter for the foregoing reasons.  However, in this Circuit, ". . . a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP*, 946 F.3d at 132.  Indeed, the applicable statute mandates that a district court "'shall' transfer the case rather than dismiss it 'if [doing so] is in the interest of justice.'"  *Id*. (quoting 28 U.S.C. § 1631.)  Although we may transfer a case *sua sponte*, we need not investigate on our own all other courts in which the case "might" or "could have" been brought.  *Id*. (citations omitted).  Notwithstanding, we must make some findings under § 1631, at least when the parties identify other courts that might be able to hear the case.  *Id*.  Upon considering the balance of ongoing litigation and the interests of the parties, we have determined that the interest of justice weighs heavily in favor of transferring, rather than dismissing, the claims against Parkinson, Shefte, and Sims.

The Third Circuit has held that "where a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94,

110 (3d Cir. 2009).  Before doing so, however, we are directed to "weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."  *Id.* (citations omitted).  We understand that by severing these claims we are separating the individual defendants, who allegedly acted on behalf of the corporate defendants that caused Plaintiffs' injuries.  We also recognize, however, that any inconvenience Plaintiffs experience based on this transfer does not outweigh the cost of dismissing these claims outright.

Defendants have identified the United States District Court for the Western District of Arkansas as a court of competent jurisdiction to hear this dispute.  (*See* ECF No. 46.)  Indeed, Defendants have admitted that the exercise of personal jurisdiction (and venue) would be proper in that court.  (*See id.*)  Considering this, we thus transfer all claims asserted against Defendants Parkinson, Shefte, and Sims to the United States District Court for the Western District of Arkansas.

## III.   VENUE

### a.   Venue is Proper in the Eastern District of Pennsylvania Pursuant to 28 U.S.C. §1391(b)(3)

As previously state, venue is proper in civil actions in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b).

Here, it is undisputed that no natural person defendant is a Pennsylvania resident.  *See supra* note 2.  However, for purposes of venue, Hannover and Medallion are deemed to reside in the Eastern District of Pennsylvania as they are subject to specific personal jurisdiction in this dispute.  *See* 28 U.S.C. §1391(c)(2).  Since all defendants in this dispute cannot be deemed residents, however, venue is improper under 28 U.S.C. §1391(b)(1).

Accordingly, we must then analyze venue under 28 U.S.C. §1391(b)(2).  In their Motion, Defendants assert that "[t]he omission Plaintiff cites giving rise to its claims [is] Defendants' failure to remit the full guaranteed amount under the Promissory Notes, occurred in Arkansas, where Defendant[s] Hannover and Medallion maintain their principal place of business, not Pennsylvania."  (ECF No. 46, ¶ 58.)  Plaintiff has responded to this assertion by stating that all of Defendants alleged acts ". . . were directed against a Pennsylvania [c]ompany over a contract for the marketing and distribution of a Pennsylvania-produced film . . ."  (ECF No. 48, ¶ 58.)

When assessing whether events of omissions giving rise to a plaintiff's claims are substantial under 28 U.S.C. §1391(b)(2), we must look at the nature of the dispute.  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).  Here, we find that the acts or omissions that gave rise to Plaintiff's claims all occurred in Arkansas, not Pennsylvania.  While "Getting Grace" was filmed in Pennsylvania, and Pennsylvania audiences may have been targeted through advertisements and marketing, these acts are not what gave rise to this action.  This action arises from Defendants' alleged failure to pay monies owed to Plaintiff pursuant to the Agreement and associated Promissory Notes.  *See id*. ("Even though the result was Plaintiff's non-receipt of those items [and payment] in Pennsylvania, the omissions bringing about this result actually occurred in Michigan.").  As such, we agree with Defendants.  Proper venue cannot be established under 28 U.S.C. §1391(b)(2).

Under 28 U.S.C. §1391(b)(3), if there is no district in which an action may otherwise be brought, venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  As discussed above, Defendants Hannover and Medallion are subject to this Court's jurisdiction with respect to this action.  As such, venue is proper in this action under 28 U.S.C. §1391(b)(3).

### b. Venue for All Claims Asserted Against Hannover and Medallion is Transferred to the Western District of Arkansas

In the alternative, Defendants have moved to transfer venue, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Arkansas.  (ECF No. 46, ¶¶ 64-80.)  We have already determined that we do not have personal jurisdiction over Defendants Parkinson, Shefte, and Sims, and we have transferred claims against them accordingly to the Western District of Arkansas.  We now consider whether to transfer venue for the remaining claims—against Defendants Hannover and Medallion—to that same court.

District Courts may order a transfer of venue under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In this analysis, "the district court is vested with a wide discretion, which is rarely disturbed . . ."  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted).  Accordingly, in its analysis, the Court must first determine that venue would be proper in another district.  *Cable v. Allied Interstate, Inc.*, No. 12-96, 2012 U.S. Dist. LEXIS 67111, at *3 (E.D. Pa. May 11, 2012).  Then, the Court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum."  *Id.*, at *3 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Within the Third Circuit, courts presented with a § 1404(a) analysis must consider several public- and private-interest factors. *See Jumara*, 55 F.3d at 879-80. Private-interest factors include the following:

(1) Plaintiff's forum preference as manifested in the original choice;
(2) Whether the claim arose elsewhere;
(3) The convenience of the parties as indicated by their relative physical and financial condition;
(4) The convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
(5) The location of books and records (similarly limited).

*Id*. at 879.

Public-interest factors to be considered are as follows:

(1) The enforceability of the judgment;
(2) Practical considerations that could make the trail easy, expeditious, or inexpensive;
(3) The relative administrative difficulty in the two fora resulting from court congestion;
(4) The local interest in deciding local controversies at home;
(5) The public policies of the fora; and
(6) The familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-80.

Ordinarily, the "burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879. However, the presence of a valid forum selection clause, ". . . which requires that there [has] been no fraud, influence, or overweening bargaining power, shifts to the party seeking to avoid the forum selection clause, 'the burden of demonstrating why they should not be bound by their contractual choice of forum.'" *Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 U.S. Dist. LEXIS 28908, at *7 (E.D. Pa. Apr. 6, 2009) (quoting *Jumara*, 55 F.3d at 880).

Here, Plaintiff has met that burden. We find that, in consideration of both the valid forum selection clauses and the *Jumara* factors, it is in the interest of justice to transfer venue for all claims against Hannover and Medallion to the Western District of Arkansas.

In their Motion, Defendants concede that they are all subject to personal jurisdiction in the

State of Arkansas.  (*Id*., ¶ 66.)  Indeed, all Defendants are Arkansas residents.  *See supra* note 2.

Defendants further note that both Promissory Notes in dispute contain a forum selection clause indicating that "[j]urisdiction and [v]enue for any action or proceeding with regard to this Promissory [N]ote shall be in Washington County, Arkansas."  (ECF No. 1 Ex. G, ¶ 13(c); ECF No. 1 Ex. G-1, ¶ 12(c).)  Plaintiff, in response, argues that the Agreement itself does not contain a forum selection clause, and that Defendants unilaterally drafted both the Agreement and the Promissory Notes, and thus they should be construed against Defendants.  (ECF No. 48, ¶ 69.)  Plaintiff, however, provides no legal authority to support the position that the Agreement's silence as to venue indicates that ". . . Plaintiff is free to select a venue of its choosing."  (*See id*.)  Indeed, this Court has upheld forum selection clauses in similar matters where only one contract in dispute contained a venue provision.  *See Campanini*, 2009 U.S. Dist. LEXIS 28908, at *8-12 (upholding and enforcing a mandatory forum selection clause, and transferring venue pursuant to § 1404(a), in a dispute involving two contracts, only one of which contained a forum selection clause).

Considering the private-interest factors set forth in *Jumara*, we find that the omissions leading to this dispute all occurred in the State of Arkansas.  We further note that all defendants either reside or have their principal place of business within the Western District of Arkansas.  Also, as stated above, jurisdiction over three other defendants in this matter has already been transferred to the Western District of Arkansas.  Additionally, Plaintiff's principal witness maintains a residence in Burbank, California; Arkansas is centrally located within the United States and closer to California than Pennsylvania.  Lastly, books and records are likely to be located at Hannover and Medallion's offices—both in Arkansas.  As such, the private-interest factors clearly weigh in favor of transfer.

We then turn to an analysis of the *Jumara* public-interest factors.  Most of these either

do not apply or are neutral as to this dispute.  Those that are relevant, however, also weigh in favor of transfer.  First, it would be relatively easier administratively to conduct this case in the Western District of Arkansas as compared to the Eastern District of Pennsylvania, as the former has a significantly lower volume of cases.  *See* UNITED STATES COURTS, FEDERAL COURT MANAGEMENT STATISTICS, 16, 55 (2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf. Second, Arkansas has a greater interest in deciding this case as the omissions giving rise to the dispute occurred in that state.  Third, this dispute may be subject to Arkansas state law, as the Agreement in dispute contains a choice of law provision indicating that Arkansas law governs.[3] (ECF No. 48, ¶ 71.)  Accordingly, of the relevant public-interest factors, all weigh in favor of transfer.

## IV.    CONCLUSION

We conclude the Defendants Parkinson, Shefte, and Sims are not subject to this Court's jurisdiction.  Thus, we sever and transfer all claims asserted against them to the United States District Court for the Western District of Arkansas.

Furthermore, for the foregoing reasons, we transfer venue as to the claims asserted against Defendants Hannover and Medallion to the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).

An appropriate Order follows.

---

[3] Plaintiff notes that while the Agreement provides that Arkansas law governs, the Promissory Notes state that New York law governs.  (ECF No. 48, ¶ 71.)  This is not relevant to deciding whether venue is more appropriate within this District or within the Western District of Arkansas as none of the agreements provide that Pennsylvania law governs.